IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN THE MATTER OF THE GPS TRACKING OF THE CELLULAR TELEPHONE ASSIGNED CALL NUMBER (740) 550-0861 | Case No. 3:19-mj-00025<br><br>**Filed Under Seal** |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Matthew Yount, being first duly sworn on oath, depose and say:

### I. INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for cellular telephone assigned call number (740)550-0861, (hereinafter "Target Cell Phone 8" or "TT8"), whose service provider is Sprint, a wireless telephone service provider. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7). Specifically, I am a Special Agent with the Drug Enforcement Administration ("DEA"), assigned to the Charleston, WV District Office. In that capacity, I investigate violations of the Controlled Substances Act (Title 21, United States Code, Section 801, et seq.) I have been employed as a Special Agent with the DEA since June 2018. Prior to becoming a Special Agent, I served with the Missouri City Police Department as a police officer and Narcotics investigator. In my experience as a law enforcement officer, I have participated in numerous narcotics investigations, during the course of which I have participated in physical surveillance, undercover operations, and executions of search warrants.

3. I have completed the DEA Basic Agent Training Course as well as other training courses related to gangs and narcotics trafficking. I have participated in narcotics investigations at both the local and federal level, and I have participated in numerous federal search warrants. As a result, I have become familiar with methods of operation of drug traffickers and organizations. As a Special Agent with the DEA, I have the responsibility of working with other federal and state law enforcement officers in investigations of violations of federal and state controlled substance laws, including the investigation of heroin, cocaine, methylenedioxymethamphetamine (MDMA), methamphetamine, marijuana and other dangerous drug organizations.

4. I have participated in the debriefing of defendants, witnesses, and informants, during which time I have discussed with them their methods of drug smuggling, distribution, packaging, trafficking, avoiding law enforcement, and laundering proceeds, among other concerns related to drug trafficking. I have discussed and learned from other law enforcement investigators in regards to these matters as well.

5. Based on my training, experience and conversations with other experienced narcotics investigators, I have gained experience in the techniques and methods used by drug traffickers to distribute controlled substances, their use of cellular phones and other electronic communication devices to facilitate their trafficking activity, and the methods used to conceal and launder the proceeds of said activity.

6. Through my involvement in a federal Title III investigation, I have gained experience in that investigation involving the interception of wire communications. I have been involved in the review and deciphering of intercepted coded conversations between narcotics traffickers that were later corroborated by surveillance. Throughout my law enforcement

career, I have spoken with, worked with, and gained knowledge from numerous experienced federal, state, and local narcotics officers about drug traffickers and their use of cell phones to facilitate drug trafficking by, for example, using code during their conversations. I have also received extensive instruction and practical training on intercepting communications and conducting coordinated surveillance while at the DEA Academy.

7. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 21 U.S.C. Section 841 (a)(1) have been committed, are being committed, and will be committed by the user of Target Telephone 8 and/or additional unknown persons. There is also probable cause to believe that the location information described in Attachment B will constitute evidence of these criminal violations, and will lead to the identification of individuals who are engaged in the commission of these offenses.

8. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. I have not included every fact concerning this investigation. This affidavit is intended to show merely that there is a sufficient factual basis for a fair determination of probable cause to support the Application.

## II. PURPOSE OF THIS AFFIDAVIT

9. This affidavit is submitted in support of an application for a search warrant, all with respect to the following target telephone(s):

   a. **Target Telephone 8 ("TT8")**: (740)550-0861, which is a prepaid cellular telephone with service provided by Sprint. According to records obtained from Sprint, **TT8** is subscribed to "GUTTER EE" at "1707 8th Avenue, Huntington WV," with an activation date of November 7, 2016. Investigators believe that the user of **TT8** is Eric MCNEELEY, who is using **TT8** to facilitate his drug

trafficking activities.

10. Authority is requested to apply not only to the target telephones, but to any changed telephone numbers subsequently assigned to the telephone bearing the IMSI or ESN number for the target device, or to any cellular telephone bearing different IMSI or ESN number, but using the same telephone number currently assigned to the target telephone.

11. This is the first application in this district for a GPS tracking warrant for the above listed Target Telephone.

### III. SOURCES OF INFORMATION

12. I have obtained the facts set forth in this Affidavit through personal participation in the investigation, from oral and written reports of other law enforcement officers, from records, documents and other evidence obtained during this investigation, from confidential sources and sources of information who are associated with, and knowledgeable about, the subjects of this investigation and their confederates, and from other sources of information as referenced herein. I have reviewed official reports prepared by other law enforcement officers participating in this investigation and in the other related investigations by agencies referenced in this Affidavit.

13. When this Affidavit refers to vehicle ownership, either I or other agents involved in the investigation have reviewed the relevant state vehicle records from the West Virginia Department of Motor Vehicles ("DMV"), or the equivalent agency in other states. Similarly, when I refer to identification documents, either I or other agents involved in the investigation have reviewed the relevant driver license or similar records maintained by DMV or the equivalent agencies in other states. When I refer to the criminal history of a subject, either I or other agents involved in the investigation have reviewed the available criminal history from state or federal agencies. When I refer to telephone

subscription records, either I or other agents involved in the investigation have reviewed the subscriber records obtained from the telephone company by administrative subpoena or court order, or I have obtained the information from other law enforcement officers familiar with this investigation. When I refer to telephone toll records, either I or other agents involved in the investigation have received the information from the telephone company pursuant to an administrative subpoena or court authorized pen register/trap and trace device.

14. On April 5, 2019, U.S. District Judge Robert C. Chambers signed an Order authorizing wire and electronic communication interception on a telephone used by George LOCKHART, (304)942-9475 (TT3). This order was obtained as a result of an extensive investigation into LOCKHART, which included numerous controlled purchases of heroin from LOCKHART, using a confidential source, referred to as "CS2." Over the course of our investigation, we have utilized CS2 to purchase heroin from LOCKHART on two occasions, specifically on December 18, 2018 and February 5, 2019. These controlled purchases were each for five grams and an ounce of heroin, respectively.

15. On April 8, 2019, investigators began intercepting LOCKHART's phone, (304)942-9475 (TT3). Intercpetion has revealed that LOCKHART is us using (304)942-9475 (TT3) to facilitate his durg trafficking activities. This affidavit relies on calls intercepted to/from LOCKHART's phone, (304)942-9475 (TT3). When I reference these intercepted communications I have either listened to the calls myself, or am relying on summaries provided to me by investigators who are monitoring the wiretap and are familiar with this investigation. To date, intercepted communicaitons have been conducted in English.

IV. PROBABLE CAUSE

A. Identification of MCNEELEY as User of TT8

16. During the month of January 2019, investigators with DEA Charleston met with a confidential source, referred to as, "CS4[1]" in reference to an individual trafficking heroin and methamphetamine. CS4 provided a phone number for "E" as (740) 550-0861 (**TT8**) and a Facebook account "Ogb See Hoe". Using the pictures on the Facebook account, investigators were able to positively identify "E" as MCNEELEY. CS4 stated he/she purchased an ounce of methamphetamine for $400 and an "eight-ball" (3.5 grams) for $80 - both from MCNEELEY. CS4 stated he/she purchased 1.5 grams of heroin for $170 from MCNEELEY. Toll analysis confirmed that MCNEELEY, (740) 550-0861 (**TT8**), was in direct contact with LOCKHART (TT3).

17. As detailed above, on April 8, 2019, investigators began intercepting LOCKHART's phone (TT3). Interception has revealed that LOCKHART is sourcing his heroin from Detroit, Michigan, and is working with multiple individuals to help process and distribute heroin on the streets of Huntington, West Virginia. Based on intercepted calls, investigators believe MCNEELEY, (740) 550-0861 (**TT8**), is on of these individuals.

18. More specifically, on April 16, 2019, at approximately 1:22 p.m., LOCKHART (TT3) received a call (session #22224) from MCNEELEY, (740) 550-0861 (**TT8**). During the call MCNEELEY said he just got into town and told LOCKHART to come to his house. LOCKHART said he couldn't remember where MCNEELEY lived and MCNEELEY said, "on 28th and Hite" and LOCKHART said he would come by. It should

---

[1] CS4 was signed up as a confidential source with the Kenova Police Department in January 2019. CS4 stopped communicating with investigators and was deactivated after CS4 was arrested by Huntington PD. CS4 has prior arrest and/or convictions for trafficking drugs, forgery, driving under suspension, identity fraud, uttering, fraud with access device, attempt to commit felony, obstruction, receiving stolen property, petit larceny, domestic violence and kidnapping.

be noted that investigators working this investigation were informed by investigators with Huntington PD ("HPD") that they were also working an active drug investigation into MCNEELEY. Investigators with HPD informed us that they had recently purchased heroin from MCNEELEY at 2805 Hite Avenue, Huntington, West Virginia. Investigators believe this further confirms that MCNEELEY is the user of (740) 550-0861 (**TT8**).

19. Minutes later, at approximately 1:26 p.m., LOCKHART (TT3) called (session #22225) MCNEELEY, (740) 550-0861 (**TT8**). During the call, LOCKHART said he was on 28th and MCNEELEY told LOCKHART to turn onto Hite. Seconds later, LOCKHART and MCNEELEY said they saw each other and the call ended.

20. Approximately an hour and half later, at 3:02 p.m., LOCKHART (TT3) received a call (session #22250) from MCNEELEY. During the call MCNEELEY asked, "they did it yet?" LOCKHART replied, "yea, they said it, it's ok man." LOCKHART relayed that he had someone try .20 grams and they said it was just "alright." LOCKHART said that they would have to "break it down" to "25 a piece…and clean it up." LOCKHART told MCNEELEY that he could "clean it up" with the "sleep" and "isotol." LOCKHART then detailed how MCNEELEY could cook "10" of the "isotol" to change the color and make it dark, then add that to the "25," along with "10" of the "fetty."

21. Based on my training and experience, and that of those around me, I believe that LOCKHART informed MCNEELEY that some individuals tested the heroin and said it was just "alright." This would mean that LOCKHART and MCNEELEY would have to improve the quality of the heroin, or "clean it up." LOCKHART then detailed how MCNEELEY could improve the quality of the heroin. LOCKHART instructed MCNEELEY to cook "10" of the "isotol," which referred to heating isotol powder, likely over a stove, to change the color to a dark brown. LOCKHART then told MCNEELEY to add the cooked

isotol to the "25," along with "10" of the "fetty." Investigators believe the "25" is referring to the orginial bag of 25 grams of heroin, of which they were trying to improve the quality. More importantly, the "10" of the "fetty" is likely code for 10 grams of fentanyl, which would greatly increase the quality of the bag of heroin. The end result would mean that for each bag of "25" that MCNEELEY was in possession of (LOCKHART indicated they would have to break "each bag" down to "25," meaning there are multiple bags), once the bags were cleaned up MCNEELEY would have approximately 45 grmas of a heroin/fentanyl mixture in each bag, which could then be sold by the gram on the streets of Huntington, West Virginia. Investigators believe the above detailed calls confirm that MCNEELEY is working in league with LOCKHART and is using his cell phone, (740) 550-0861 (**TT8**), to facilitate their shared drug trafficking activities.

### V. CONCLUSION

22. Based on the investigation to date, summarized above, investigators believe the above described Target Telephone(s) are being used to facilitate drug trafficking. Based upon the information which has been uncovered during the course of this investigation, and on the advice, experience, and knowledge of other agents/detectives involved in this investigation, I believe that these specific and articulable facts present reasonable grounds to believe that GPS data, and other information sought here are relevant and material to an ongoing criminal investigation, and that there is probable cause to conclude that the user of the above described Target Telephone(s) are actively engaged in a conspiracy to violate the federal controlled substances laws specified above.

23. In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service

have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" that received a radio signal from the cellular telephone and, in some cases, the "sector" to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise than E-911 Phase II data.

24. Based on my training and experience, I know that Sprint can collect E-911 Phase II data about the location of the Target Telephone(s), including by initiating a signal to determine the location of the Target Telephone on their network or with such other reference points as may be reasonably available.

25. Based on my training and experience, I know that Sprint can collect cell-site data about the Target Telephone(s).

26. Based on the facts set forth in this affidavit, there is probable cause to suspect that violations of 21 U.S.C. § 841 and § 846 have been committed, are being committed, and will be committed by the users of the above described Target Telephone(s). In order to obtain additional information relating to their criminal violations under investigation, law enforcement must identify the physical location of the above described Target

Telephone(s). There is probable cause to believe that the use of the investigative technique described by the warrant will result in officers learning that identifying information.

27. I further believe that the requested information will assist agents in identifying connections between conspirators, identifying new conspirators, and lead agents to locations used by the organization to store and distribute large quantities of controlled substances and/or proceeds derived from the sale of controlled substances.

## VI. AUTHORIZATION REQUEST

26. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rules of Criminal Procedure 41 and 18 U.S.C. Section 2703 (c).

27. To avoid seriously jeopardizing both the DEA investigation, and to avoid the risk of the suspects' potential flight from prosecution and destruction of evidence prior to indictment, I request that this pleading be sealed and that notice required by Fed. R. Crim. P. 41(f) be delayed until 30 days after the collection authorized by the warrant has been completed, in accordance with Title 18, United States Code, Section 3103a(b). Based upon my knowledge, training, and experience, it is my belief that the information contained in this affidavit, if prematurely disclosed to the public, could result in the targets' flight from prosecution, destruction of or tampering with evidence, intimidation or retaliation against and other potential witnesses, and otherwise seriously jeopardize the ongoing investigation. Specifically, information contained in this affidavit, if disclosed, could pose a significant risk to the safety of confidential sources listed herein, should their identity be discovered while operations are ongoing, and to the officers and agents who are conducting surveillance during the operations involving these aforementioned confidential sources. Therefore,

I request that this affidavit be sealed. If necessary, I may request that the Court, upon a showing of good cause, order a further adjournment of the time permitted to serve notice, if necessary to protect the safety of any individual, avoid flight or destruction of evidence, and ensure that the investigation is not jeopardized prior to its completion.

28. I further request that the Court direct Sprint to disclose to the government any information described in Attachment B that is within their possession, custody, or control. I also request that the Court direct Sprint to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with their services, including by initiating a signal to determine the location of their network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

29. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Telephone outside of daytime hours.

Matthew Yount, Special Agent
Drug Enforcement Administration

SUBSCRIBED AND SWORN before me this 19th day of April, 2019.

HONORABLE Cheryl A. Eifert
United States Magistrate Judge